**United States District Court**
**District of Massachusetts**

```
─────────────────────────
                            )
Kevin Patrick Lynch,        )
                            )
          Plaintiff,        )
                            )
          v.                )      Civil Action No.
                            )      22-11997-NMG
Enlighten Software Inc.,    )
                            )
          Defendant.        )
─────────────────────────   )
```

**MEMORANDUM AND ORDER**

**GORTON, J.**

Plaintiff Kevin Patrick Lynch ("plaintiff" or "Lynch") alleges that his former employer, Enlighten Software Inc. ("defendant" or "Enlighten"), misclassified him as an independent contractor, failed to pay him earned wages and overtime, and retaliated against him by interfering with his ability to obtain new employment.  His four-count complaint asserts claims under the Massachusetts Wage Act, M.G.L. ch. 149, § 148 et seq., ("the Wage Act"), and under the Massachusetts overtime pay statute, M.G.L. ch. 151, §1A et seq.  Pending before the Court is defendant's motion to dismiss Counts I, II and III of the complaint.  For the reasons that follow, the motion will be allowed.

I.   **Background**

The following facts are drawn from the complaint and from the employment documents pertinent to the parties' dispute.[1]

Lynch began working for Enlighten in 2016 as an on-site software consultant for Enlighten customers.  He frequently worked more than 40 hours per week and was paid for "full days worked" but not for any overtime.  Lynch asserts that he worked only for Enlighten and was misclassified as an independent contractor during the time period pertinent to his claims.

In March, 2020, Enlighten offered Lynch full-time employment as a salaried employee ("the Offer") which he accepted.  At that time, plaintiff also accepted an offer for a discretionary bonus in the amount of $45,000 in exchange for a general release of claims including, inter alia, any wage or employment claims arising out of his relationship with Enlighten up until that point ("the Release").  The Release did not refer to any specific disputes between the parties.

Plaintiff's employment was terminated in June, 2022, shortly after he returned from paternity leave and disclosed a serious health condition which might have required him to take

---

[1] The Court has considered the offer of employment and the release of claims which plaintiff signed in March, 2020, because the authenticity of such documents is undisputed and they are central to the claims raised here. See, e.g., Hogan v. Eastern Enters./Boston Gas, 165 F. Supp.2d 55, 58 (D. Mass. 2001); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

time off from work.  Although Enlighten offered him severance in
exchange for a release of all potential claims, Lynch demurred
and informed his employer that he would seek legal counsel with
respect to his prior, alleged misclassification as an
independent contractor and his pending termination.

After Lynch was dismissed from the employ of Enlighten, he
interviewed for a position at a different company and expected
to receive a written offer of employment.  Several days later,
the Chief Executive Officer of Enlighten met with plaintiff's
potential new employer and, subsequently, plaintiff was informed
that he would not be receiving a job offer.  Lynch alleges that
Enlighten disparaged him or otherwise dissuaded the potential
new employer from offering him employment in retaliation for his
assertion of rights.

Plaintiff brought suit in Massachusetts Superior Court for
Suffolk County in July, 2022.  In November, 2022, defendant
removed the case to this Court on diversity jurisdiction grounds
and thereafter filed the pending motion to dismiss Counts I, II
and III.

## II.  <u>Motion to Dismiss</u>

### A.  Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the subject pleading must contain sufficient factual
matter to state a claim for relief that is actionable as a

matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson, 987 F.2d at 3).  For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B.  Application**

Defendant contends that Counts I, II and III should be dismissed because plaintiff released for consideration all possible existing claims for misclassification (Count I), unpaid wages (Count II) and/or unpaid overtime compensation (Count III) in March, 2020.  Defendant does not move to dismiss Count IV for retaliation and interference with plaintiff's ability to obtain alternate employment.

The Massachusetts Supreme Judicial Court ("the SJC") has propounded that general releases of claims are enforceable and extend even to matters which were "not specifically in the parties' minds at the time the release was executed." Eck v. Godbout, 444 Mass. 724, 728, 831 N.E.2d 296, 301 (Mass. 2005); see also Sharon v. City of Newton, 437 Mass. 99, 105-06, 769 N.E.2d 738, 744-45 (Mass. 2002).  A statute has been enacted, however, that employers and employees may not enter into contracts which waive an employee's rights under the Wage Act:

> No person shall by a special contract with an employee or by any other means exempt himself from [§§ 148 and/or 150 of the Wage Act].

Mass. Gen. Laws ch. 149, § 148.

In Crocker, the SJC addressed the contrast between the general policy in Massachusetts in favor of releases and the specific provisions of the Wage Act.  It held that an agreement

- 5 -

> purporting to release all possible existing claims,
> will be enforceable as to the statutorily provided
> rights and remedies conferred by the Wage Act only if
> such an agreement is stated in clear and unmistakable
> terms. . . . [T]his course preserves our policy
> regarding the broad enforceability of releases by
> establishing a relatively narrow channel through which
> waiver of Wage Act claims can be accomplished.

Crocker v. Townsend Oil Co., 464 Mass. 1, 14-15, 979 N.E.2d 1077, 1087 (Mass. 2012).

Following that decision, courts have elaborated upon which terms and circumstances are sufficiently clear to ensure that an employee has not unwittingly waived his or her rights under the Wage Act. In MacLean, the court held that terms which referred to claims for "the payment of wages and other compensation" but not specifically to claims brought under the Wage Act were nevertheless adequate in view of a prior disagreement between the parties as to certain unpaid "paid time off". See MacLean v. TD Bank, N.A., 14-CV-40038-TSH, 2014 WL 3530813, at *2-4 (D. Mass. July 14, 2014); see also Materazzo v. Stuart Dean Co., No. 1984CV01215-C, 2019 WL 7183295, at *1 (Mass. Super. Nov. 20, 2019) (explaining that a general release which mistakenly referred to claims under the New York wage laws nevertheless barred the Wage Act claims contained in plaintiff's complaint because his release was not "unwitting" and the alleged violations had "occurred *before* the parties executed their Agreement").

- 6 -

The standard set by Crocker is satisfied by the Release in
this case.  The Release provides that:

> In consideration for this discretionary, one-time
> bonus, you hereby generally and completely release the
> Company . . .  from any and all claims, liabilities
> and obligations, both known and unknown, that arise
> out of or are in any way related to events, acts,
> conduct, or omissions occurring at any time prior to
> and including the date you sign this Agreement (the
> "Released Claims").

> This general release includes, but is not limited to
> claims under: . . . the Fair Labor Standards Act, as
> amended (42 U.S.C. § 200e et seq.) and/or any
> Department of Labor regulations, guidance, or
> publications (including the publication known as the
> Field Operations Handbook); the Massachusetts Wage Act
> (G.L. c. 149, § 148, et seq., as amended),
> Massachusetts Overtime Law (G.L. c. 151, § 1A, et
> seq., as amended), or other Wage Payment Laws—
> including any claim for alleged unpaid wages, overtime
> pay, and/or treble damages . . . the Massachusetts
> Wage Payment Statute, G.L. c. 149, § 148 et seq., as
> amended . . . or any other federal, state or local
> civil or human rights law, or any other local, state
> or federal law, regulation or ordinance; and any
> public policy, contract, tort, or common law.

Although the Release refers to multiple statutes, including
some which do not relate to wage claims, the pertinent terms
unmistakably and repeatedly emphasize that any claims under the
Wage Act, other wage and overtime laws, or with respect to
"unpaid wages, overtime pay, and/or treble damages" are
specifically included under the agreement.  In view of those
clear terms, there is no colorable argument that plaintiff
"unwittingly waive[d] [his] rights under the Wage Act." Crocker,
979 N.E.2d at 1087.  Furthermore, plaintiff signed the Release

on the same day that he signed the Offer, which appointed him as a salaried employee, and therefore had further context which indicated that he was releasing claims with respect to his alleged misclassification in addition to claims for unpaid wages and/or overtime.  Finally, the Release is clear that it extends to any claims arising out of events that occurred on or before the date when Lynch signed it regardless of whether such claims were known and/or in dispute at that time.

Plaintiff contends that a release of claims under the Wage Act cannot be enforced unless those claims had already been the subject of a dispute and the parties specifically intended to settle them.  Lynch therefore asserts that the Release is unenforceable here because, at the time it was signed, he and Enlighten had not yet disputed the claims that he now propounds. Instead, the Release purportedly provided a discretionary bonus in exchange for a release of all existing claims (known or unknown).  Plaintiff's contention is not, however, supported by Crocker or subsequent case law.

The decision in Crocker reflects the antipathy of the SJC toward the purported release or waiver of prospective Wage Act claims. Id. at 1080 n.3 (explaining that a release of prospective claims under the Wage Act is "far more problematic" than a release of potential Wage Act claims in existence as of the date of the agreement).  But the SJC did not require that a

Wage Act claim be the subject of an active dispute between the parties in order for a release to be enforceable.  To the contrary, it specifically held that "clear and unmistakable" releases were enforceable with respect to "all possible existing claims" and nowhere imposed a requirement that such claims actually be in dispute. See Crocker, 979 N.E.2d at 1087.  Thus, although an active dispute as to purported Wage Act violations may be probative of the fact that a release is intended to settle those claims, such a dispute is not a prerequisite for enforceability.

Plaintiff also cites Brennan v. IQVIA Inc., No. 20-CV-12230-IT, 2021 WL 1026717 (D. Mass. Mar. 17, 2021), in which another session in this court considered a claim regarding unpaid commissions and/or bonuses which did not accrue until after the release had been signed.  Specifically, the district judge explained that

> [prior to his termination,] Brennan began working on a
> potential business deal between IQVIA [his employer] and
> Supernus Pharmaceuticals ("Supernus"). . . . [and] Supernus
> and IQVIA verbally agreed to move forward on a deal worth
> nearly $30 million. . . . Shortly following Brennan's
> termination, IQVIA closed on the Supernus deal. Brennan
> alleges that under the terms of his employment, he is owed
> a commission of $169,950 and a bonus of $5,000. IQVIA
> claims that it no longer has to pay Brennan the commission
> and bonus at issue.

Id. at *3 (internal citations omitted).

The court in Brennan held that the release at issue did not bar plaintiff's claims because it made "no mention of any possible claim to unpaid commissions or bonuses" and there was no indication of the parties' intent to resolve a dispute related to unpaid wages. Id. at *5.  In fact, because the pertinent deal between plaintiff's employer and Supernus had not yet closed when the release was signed, there was not even a possible claim with respect to unpaid commissions or bonuses in existence at that time. See Crocker, 979 N.E.2d at 1087 (describing the enforceability of releases of "possible existing claims").  The decision in Brennan does not, therefore, expand or alter the requirements elucidated in Crocker and instead reflects the same skepticism with respect to the release of prospective claims.

Finally, plaintiff proffers a set of purportedly relevant facts in his opposition to the motion to dismiss and asserts that they support his contention that he signed the Release under duress.  No facts alleged in the complaint, nor any aspect of the Release and/or the Offer, support that assertion.  Even if this Court were to consider the allegation set forth for the first time in Lynch's opposition that a "differential in power between the parties . . . exacerbated by the pandemic" motivated him to sign the Release, the occurrence of the COVID-19 pandemic does not support his claim of duress because it was not a

- 10 -

financial difficulty caused by Enlighten. See Takki v. Beth Israel Deaconess Hospital-Plymouth, Inc., 18-10099-FDS, 2018 WL 3912249, at *3 (explaining that duress is present only in "extreme and extraordinary" cases and not in ordinary instances of "hard bargaining"); Cabot Corp. v. AVX Corp., 448 Mass. 629, 637-38, 863 N.E.2d 503, 511-12 (Mass. 2007).

**ORDER**

For the foregoing reasons, defendant's motion to dismiss Counts I, II and III (Docket No. 7) is **ALLOWED.**

**So ordered.**

```
                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
```

Dated:  June 2, 2023